SIMON DUBINSKY *vs.* GUISSEPPE CAMA & another.

Middlesex.　January 20, 1927. — October 14, 1927.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Easement,* Creation, Abandonment. *Way,* Private. *Land Court,* Jurisdiction, Decree, Plan, Certificate of title. *Equity Pleading and Practice,* Decree.

Where, in a certificate of title to land issued in accordance with a decree of the Land Court, mention is made of an easement as an encumbrance or as an appurtenance to the land described in the certificate and there

is therein a reference to a plan, the plan must be considered as a part of the certificate so far as necessary to aid in description and identification of the easement.

In a suit in equity to enjoin trespass upon land of the plaintiff, the defendant in his answer set up a claim of rights of way over the land. It appeared that each party's title to his land was registered. The plaintiff's certificate of title was issued in 1921, and was to a lot bounded southerly on a public way "subject to the restrictions written on plan . . . [described] and to the right of way referred to and appearing on said plan." The plan showed also the lots owned by the defendant, one directly north of the plaintiff's lot, one touching the plaintiff's lot only at its northwesterly corner, and a third north of the other lots and not touching the plaintiff's lot. At the time the defendant acquired the lots he also owned a lot bounding his second and third lots on the west, and abutting on a public way. The defendant's certificate of title was issued in 1924. It contained a description of the three lots as one parcel and as adjoining other numbered lots, and no mention of the rights of way on the plan. The plan showed only nine lots, none of great size. It showed a "3 ft. Passageway," forming a strip on the easterly side of the plaintiff's lot and running back to the defendant's first lot, and a "5 ft. Passageway," forming a strip on the westerly side of the plaintiff's lot running back to the defendant's first lot and touching the corner of the defendant's second lot, and, adjoining that "5 ft. Passageway," a similar passageway on land of the owner adjoining the plaintiff on the west. Until shortly before the suit was brought the owners of the respective lots did not know of, or disregarded; the existence of the passageways and each fenced in his own property. A third right of way, not in issue, was shown on the plan running from the defendant's first lot to a street. *Held,* that

(1) Although the words used in the plaintiff's certificate of title were "subject to . . . the right of way referred to and appearing on said plan," the plaintiff's lot by a proper interpretation of the certificate and the plan was made subject to both ways shown on the plan;

(2) It was not for this court to determine what need there was for the maintenance of the two rights of way over the plaintiff's lot to the defendant's first lot;

(3) The circumstance that, at the time of the filing of the plan, access to what afterwards became the defendant's first lot was afforded from another public way by a third right of way over another lot of his shown on the plan, was of no consequence in the determination of the question presented on the report;

(4) The principle as to the presumed intention of the parties with respect to rights in numerous streets and ways upon a plan of a tract of considerable size had no application;

(5) The issuance of certificates of title in conformity to the plan and its accompanying decree had the effect of creating the rights involved in this litigation by express grant; and hence, since they did not spring into existence as ways of necessity, the question, whether there was a continuation of any necessity that might have been a

consideration leading to their creation by the decree, was not of consequence;

(6) Whatever easement of travel was appurtenant to the defendant's land under the registration records shown in its chain of title, under G. L. c. 185, passed to them under their certificate of title although no reference thereto was made in the certificate;

(7) No abandonment by the defendant of the easements was shown.

It is not fatal to a claim of the existence of such easements appurtenant to registered land that the certificate of the title of the dominant estate contained no reference to the easement if the certificate of title to the servient estate, or a plan accompanying it, shows its existence: it is only easements to which the registered land is subject which must be set out in a decree and certificate of title under G. L. c. 185.

In order to establish abandonment of easements of rights of way there must be acts by the owner of the dominant estate conclusively and unequivocally manifesting either a present intent to relinquish the easement, or a purpose inconsistent with its further existence.

A final decree in the suit above described which affirmed the rights of the defendant "over the respective passageways shown on the plan . . . leading to [the defendant's] lots . . ." was too broad, and was ordered modified to apply only to the defendant's rights in the passageways over the plaintiff's lot.

BILL IN EQUITY, filed in the Superior Court on September 21, 1925, to enjoin the defendants from passing over land of the plaintiff.

The answer of the defendant, among other allegations, set up a claim of right to pass over the plaintiff's land by reason of rights of way described in the opinion.

The suit was referred to a master. Annexed to the master's report was a copy of the plan referred to in the opinion, entitled, "Re-sub-division of 'Lots 91–92–94–95' Section 'D' Everett," and "filed in the Middlesex So. Registry District, on March 30, 1901, with Certificate No. 253 in Registration Book No. 3, Page 161." On the face of the plan was the statement: "Lots on this plan are subject to the 'Restrictions' shown on copy of plan of said Sec. 'D,' filed with Certificate of Title No. 68." On the plan also was the following:

Commonwealth of Massachusetts.

Court of Land Registration

This plan is a compilation of lots appearing on plan filed with certificate of title No. 68 at Middlesex South District Registry of Deeds and sub-divisions subsequently made of

lots thereon, which are here arranged together for greater convenience, and the Assistant Recorder at said Registry is authorized to issue a certificate or certificates of title for said lots to those legally entitled thereto according to his Registration Book, subject to and with the benefit of restrictions and rights of way referred to or appearing hereon, together with any other registered encumbrances, upon the surrender or partial cancellation as to lots sold of present outstanding certificates.

Dated this thirteenth day of March, A.D. 1901.

By order of the Court

Attest,                           Clarence C. Smith

Recorder.

Material features of the plan were as follows:

Beside the facts stated in the opinion, the master found: the defendants, previous to acquiring lots 91B, 92B and 95A on November 4, 1924, and at the date of the hearing before the master, owned a parcel of land numbered 73 Francis Street, in Everett, which abutted the westerly boundary of lots numbered 91B and 95A.

The real situation as to the title was discovered when the defendants caused a survey to be made shortly before the

bringing of the suit, and tore down the fence described in the opinion.

Other material facts are stated in the opinion. The suit was heard by *Morton*, J., by whose order there were entered an interlocutory decree confirming the master's report and a final decree dismissing the bill and decreeing that the defendants "have a right of way over the respective passageways shown on the plan referred to and incorporated in the master's report, leading to lots 91B and 92B on said plan." The plaintiff appealed.

*T. M. Vinson*, for the plaintiff.

*J. H. Cinamon*, for the defendants.

RUGG, C.J.    This is a suit in equity whereby the plaintiff seeks to have the defendants enjoined from passing over his premises and for other relief.    The dispute between the parties is whether the defendants have rights of way over a strip of land five feet in width on the extreme westerly side, and over a strip of land three feet in width on the extreme easterly side, of the lot owned by the plaintiff.    The case was sent to a master and, no exceptions having been taken, by consent his report was confirmed.    The relevant facts thus disclosed are that a considerable tract of land in Everett known as County Park was registered as to title.    Later a separate plan of a part of this larger tract called Section D was filed and a decree entered by the Land Court imposing restrictions thereon.    Finally, on March 13, 1901, a. decree was entered by the Land Court subdividing the land in Section D into smaller lots, retaining the restrictions and creating rights of way in passageways, all as shown on a plan filed March 30, 1901, entitled, "Re-Sub-division of 'Lots 91–92–94–95' Section 'D' Everett."    The decree of the Land Court extended on this plan authorized the issuance of certificates of title for the lots to those entitled thereto, "subject to and with the benefit of restrictions and rights of way referred to or appearing hereon."    This plan, hereafter called the plan, with decree of the Land Court thereon was filed with the proper land registration office.    No contention is made as to the validity of this plan and its accompanying decree.    Referring to this plan, the plaintiff is the

owner of lot numbered 92A, situated on the northerly side of Union Street as it is called in the master's report but shown on the plan as Webster Avenue; and the defendants own lots 91B, 92B and 95A, which lie northerly of lot 92A owned by the plaintiff. The certificate of title issued to the plaintiff in December, 1921, was "to lot No. 92A . . . subject to the restrictions written on plan . . . and to the right of way referred to and appearing on said plan . . . ." The certificate of title, issued to the defendants in November, 1924, for their three lots, refers to the plan, contains a description by distances of the three lots as one parcel and by bounding on other numbered lots, makes the three lots subject to the restrictions shown on another plan, but contains no mention of the rights of way shown on the plan. There is shown on the plan a "3 ft. Passageway," being the easterly three feet of the plaintiff's lot; the easterly boundary line of his lot is coincident with the easterly line of this passageway which extends from Webster Avenue northerly to lot 92B owned by the defendants. On the plan is also shown a "5 ft. Passageway," being the westerly five feet of the plaintiff's lot; the westerly boundary line of his lot is coincident with the westerly line of this passageway which extends northerly from Webster Avenue to lot 92B owned by the defendants. Adjacent to the passageway last mentioned, throughout its entire length, there appears on the plan a similar "5 ft. Passageway" on the easterly part of lot 91A belonging to a third person. The master further finds: "The two passageways, as they actually appear, show a ten-foot driveway to a point distant about seventy-one (71) feet from Union Street [Webster Avenue on the plan]. Beginning at that point on the westerly boundary of the five-foot passageway on the plaintiff's land, and running northerly on said passageway on the land of the plaintiff and on the boundary line of lots 91B and 92B to the boundary line of lot 95A, a wooden fence was erected by previous owners long prior to the acquisition by the parties hereto of their respective estates. At a point seventy-one (71) feet distant from Union Street [Webster Avenue on the plan] and at the beginning of the fence above referred to, there is a fence on the plaintiff's premises running

in an easterly direction on the land of the plaintiff and through the three-foot passageway to lot 94, thus closing access to lot 92B. This three-foot passageway is also obstructed by a bulkhead which is a part of the building on lot 92 A which was probably erected about twenty-four years ago. The actual appearance of the land and buildings, viewed from either Malden or Union Streets, would indicate that the previous owners fenced in their particular lots without regard to any passageway rights. . . . I find, upon all the evidence and upon view of the premises, that from the appearance of the lay-out of the land and buildings the owners did not know of, or disregarded, the existence of the passageways and each fenced in his own property."

As matter of construction and interpretation of the plan and the decree of the Land Court thereon, made a matter of public record, we think that the plaintiff's lot was made subject to the two rights of passage already described. His certificate of title in terms made the lot subject "to the right of way" shown on the plan. The plan was thus incorporated in the certificate of title as much as if attached thereto. The principle of construction governing the interpretation of deeds is that where mention is made of an easement as an encumbrance or as an appurtenance of the land conveyed and reference is made in the deed to a plan, the plan must be considered as a part of the deed, so far as is necessary to aid in description and identification of the easement. That principle respecting the construction of deeds of conveyance in common form is stated with ample citation of authorities in *Lagorio* v. *Lewenberg*, 226 Mass. 464, 466, and in *Downey* v. *H. P. Hood & Sons*, 203 Mass. 4, 10. It governs in the case at bar.

The creation of the Land Court and the enactment of provisions for registration of land and the issuance of certificates of title thereto have not affected that principle of construction so far as pertinent to the interpretation of certificates of title and decrees of the Land Court. This principle is as applicable to certificates of title issued under G. L. c. 185, as to deeds of conveyance at common law.

The circumstance that in the plaintiff's certificate of title

the words used are subject "to the right of way" does not identify either one or the other passageway as shown on the plan. Since they apply to one as well as to the other, and since reference is made to the plan, the lot is subject to the easements of both ways shown thereon and hereinbefore described.

We consider next the interpretation of the plan and its accompanying decree of March 13, 1901, as to the creation of rights of way for the benefit of the lots of the defendant apart from any facts found by the master to have arisen subsequently. When the decree of the Land Court of March 13, 1901, was extended on the plan and the plan and decree were made a matter of public record, some easement of passage over the passageways shown on the plan on the lot now owned by the plaintiff became appurtenant to lots 91B and 92B now owned by the defendants. The reason for this is that on the plan lots 91B and 92B were back lots not abutting on any public way. · Lot 91B was utterly inaccessible unless having easement of egress and ingress over some passageway shown on the plan. There are shown on the plan three passageways reaching to lot 92B, the two over the plaintiff's lot and one other not here in issue. Unless one of these is appurtenant to it, that lot also would be utterly inaccessible. Giving due weight to the principles underlying the implication of the right of way of necessity over land of another, *Orpin* v. *Morrison,* 230 Mass. 529, 533, and to the situation of the several lots as shown on the plan, we think it plain as matter of construction of the plan and accompanying decree that rights of passage over some of the ways "referred to or appearing" on the plan were created as appurtenant to lots 91B and 92B. The plan itself discloses no preference among these rights of way. They all appear to be on the same footing. The one shown on the westerly side of the plaintiff's lot, five feet in width, considered by itself alone, touches lot 91B only at a point; but it is contiguous throughout its length to another similar passageway on the adjacent lot to the west of that of the plaintiff, which on its northerly end abuts on lot 91B. The indication of the plan is that these two strips of land, each

five feet in width, were designed to be used as a single way ten feet in width. The finding of the master is that on the face of the earth they appear as one way for about seventy-one feet northerly from Webster Avenue. We make no determination concerning the right of way on lot 91A, as that is in no way before us. We only interpret the plan with respect to the plaintiff's land in the light of all that is shown on the plan affecting it. Unless something not shown on this record has intervened to destroy the right of the defendants to use the way over lot 91A, there is appurtenant to their lot 91B a right of passage over the passageway five feet in width on the westerly side of the plaintiff's lot. Such right of way is appurtenant in any event to the defendants' lot 92B. The passageway three feet wide on the easterly side of the plaintiff's lot likewise appears to be established for the benefit of lot 92B. What need there was for these two rights of way appurtenant to lot 92B is not for us to determine. We can only interpret the plan and decree. The circumstance that apparently access to lot 92B is afforded to another street by a third right of way is likewise of no weight in the determination of the questions presented on this record.

The plan here involved is not of a large tract with numerous streets laid out upon it. It shows only nine lots, the smallest containing but 747 square feet of land, and no one of them of great size. Manifestly the plan with its passageways is designed to have special reference to this restricted area. There is no room for the operation of the principle as to the presumed intention of the parties with respect to rights in numerous streets and ways upon a plan of a tract of considerable size. Cases like *Regan* v. *Boston Gas Light Co.* 137 Mass. 37, 42, *Attorney General* v. *Whitney,* 137 Mass. 450, and *Stevens* v. *Young,* 233 Mass. 304, 309, are not pertinent to the facts displayed on this record.

The issuance of certificates of title in conformity to the plan and its accompanying decree had the effect of creating the rights involved in this litigation by express grant, to use the terminology of real estate law before the adoption of the system of registration of titles now set forth in G. L. c. 185;

and hence whether they have continued to be or are now necessary for the enjoyment of the land of the defendants, is not of consequence. Since they did not spring into existence as ways of necessity, they do not cease as soon as the necessity ceases, and cases like *Viall* v. *Carpenter,* 14 Gray, 126, *Schmidt* v. *Quinn,* 136 Mass. 575, 576, and *Rowell* v. *Doggett,* 143 Mass. 483, 489, have no application.

We pass now to the consideration of the certificate of title under which the defendants claim. That certificate makes no mention of easements of passage over the plaintiff's land, and contains no reference to the plan on which the passageways are shown. It is a certificate of title pure and simple, containing detailed description of the land together with reference to another plan showing restrictions not now pertinent. Here again we think that the principles of the common law with respect to the interpretation and construction of deeds governs the interpretation and construction of certificates of titles under G. L. c. 185. It has long been the law touching deeds that if the owner grants an estate to which a right of way over land of a third person is appurtenant, that right of way passes as an incident although no mention is made of it and although the grant is not expressed to be with the easement or appurtenance. *Kent* v. *Waite,* 10 Pick. 138, 141. *Atkins* v. *Bordman,* 2 Met. 457, 464. *Oliver* v. *Dickinson,* 100 Mass. 114, 117. Whatever easement of travel, therefore, was appurtenant to the defendants' land under the registration records shown in its chain of title under G. L. c. 185, passed to them under their certificate of title although no reference thereto is made in their certificate of title. The requirement of G. L. c. 185, § 47, as to the contents of the decree of the Land Court and of the several sections concerning the certificate of title, contains no reference to easements appurtenant to the land. It is only easements to which the registered land is subject which must be set out in the decree and certificate of title. However desirable it may be that the decree and the certificate of title should disclose the whole state of the title, including all easements appurtenant, that does not appear to be the mandate of the Legislature as shown in G. L. c. 185. Of

course we do not intimate that statement of such appurtenant easements is not an appropriate part of a decree and certificate of title.   We only say that it is not compulsory. Even when not made expressly a part of the petition for registration, jurisdiction to register title to easements as well as other rights in land is conferred by G. L. c. 185, § 1 (a). *Levenson* v. *Ciampa,* 251 Mass. 379, 382.   *Sederquist* v. *Brown,* 225 Mass. 217.   No easement can pass as appurtenant affecting registered land as the servient estate, which is not disclosed on its title as registered.   In the case at bar, as already pointed out, the easements appurtenant to the land of the defendants are disclosed on the registered title of the lot of the plaintiff.

The facts found by the master do not make out abandonment by the defendants of their easements as matter of law. At most they show simple nonuser.   Mere nonuser of an easement created by grant does not show abandonment. *Gloucester Water Supply Co.* v. *Gloucester,* 179 Mass. 365, 379. *Butterfield* v. *Reed,* 160 Mass. 361, 369.   *New England Structural Co.* v. *Everett Distilling Co.* 189 Mass. 145, 153, 154. There are no acts of the defendants or their predecessors in title manifesting a design to relinquish their rights of way. Ignorance or disregard of their easements is not an intentional renouncement and surrender of a known right.   In order to establish abandonment of easements such as these there must be "acts by the owner of the dominant estate conclusively and unequivocally manifesting either a present intent to relinquish the easement or a purpose inconsistent with its further existence.   *Willets* v. *Langhaar,* 212 Mass. 573, 575."   *Parsons* v. *New York, New Haven & Hartford Railroad,* 216 Mass. 269, 272.   Such acts were present in *Pope* v. *Devereux,* 5 Gray, 409, *Chandler* v. *Jamaica Pond Aqueduct Corp.* 125 Mass. 544, 549, and *Porter* v. *International Bridge Co.* 200 N. Y. 234.   They are absent in the case at bar.   *Whitney* v. *Cheshire Railroad,* 210 Mass. 263, 269.   *Boston & Albany Railroad* v. *Reardon,* 226 Mass. 286, 292.   *Brookline* v. *Whidden,* 229 Mass. 485, 491, 492. *Jamaica Pond Aqueduct Corp.* v. *Chandler,* 121 Mass. 3. *Barnes* v. *Lloyd,* 112 Mass. 224, 231.

It rightly has not been argued that the plaintiff has acquired by prescription or adverse use the right to close these passageways. Since these easements were registered, prescription and adverse use are of no avail under G. L. c. 185, § 53.

No argument has been urged against the form of the decree whereby not only is the plaintiff's bill dismissed but also the defendants are affirmatively declared to have a right of way over the passageways shown on the plan. Apparently the plaintiff has assumed that the answer of the defendants was sufficient to entitle them to this relief under Equity Rule 6 (1926). See, also, *Union Trust Co.* v. *Reed,* 213 Mass. 199, 202, and cases there cited. We make the same assumption without passing upon the point. By not arguing, the plaintiff must be taken to have waived whatever, if anything, there may be in the point.

The final decree goes beyond the possible issues involved in the present litigation in that it affirms the rights of way of the defendants "over the respective passageways shown on the plan . . . leading to lots 91B and 92B on said plan." Only the passageways over the land of the plaintiff are before the court in this suit. The final decree must be modified by adding at the end after the word "plan" the words "over the lot of the plaintiff numbered 92A on said plan." As thus modified it is affirmed.

*Ordered accordingly.*