DAVID H. CARLS & another,[1] trustees, vs. LEXINGTON
FEDERAL SAVINGS AND LOAN ASSOCIATION.

Middlesex.   November 10, 1980. — December 26, 1980.

Present: HALE, C.J., ROSE, & KASS, JJ.

*Easement.  Deed,* Construction.  *Real Property,* Easement.

The failure of a grantor to refer in a deed to a driveway easement did not
   extinguish the easement where the grantor had previously recorded a
   plan showing the easement.  [89-90]

CIVIL ACTION commenced in the Superior Court on January 17, 1975.

The case was heard by *Lappin, J.*

*Wendell J. Leary* for the defendant.

*Charles J. Murray* for the plaintiffs.

KASS, J.   The plaintiffs' complaint seeks to prevent the Lexington Federal Savings and Loan Association, as owner of Lot D-2, as appearing on the plan reproduced on the following page, from using the way labelled "Driveway Easement."

Although the deeds which serve up the problem in this case are not models of art or clarity, the trail they leave, when read sequentially, is unmistakable.  They establish an easement thirty feet wide for the common benefit of abutting owners of land, the easement to be used for access to and from Middlesex Turnpike and Great Meadow Road in Burlington and for other purposes for which streets and roads are commonly used in Burlington.

Prior to February 10, 1971, Vibro Realty Corporation (Vibro) owned a tract of land in Burlington containing more

---

[1] Gary F. Snerson.  The trust on whose behalf Carls and Snerson act is named Annex Realty Trust.

Carls *v.* Lexington Federal Savings & Loan Association.

than nine acres. On March 17, 1969, Vibro recorded a plan dividing that tract into five lots, designated A, B, C, D[2] and E. The plan showed a thirty-foot way labelled "Driveway Easement" running between two abutting public streets, Middlesex Turnpike and Great Meadow Road, and serving all five lots. Five weeks later, on April 24, 1969, Vibro recorded a similar plan, prepared by the same surveyor, in connection with a mortgage to New England Merchants National Bank; this plan did not show the driveway easement.

By deed recorded February 12, 1971, Vibro conveyed Lot E, which the plaintiffs now own, to Ford Leasing Development Company (Ford) together with a thirty-foot wide easement "for direct ingress and egress and for underground utilities lines between Middlesex Turnpike, and the above described property," that easement to be used in common with the grantor (Vibro) and its assigns. Regrettably, that deed referred to the April 24, 1969, plan, the one which did not show the driveway easement. Simultaneously,[3] however, Vibro recorded a plan dated December 10, 1970, which showed a revised configuration of the five lots and the driveway easement, relocated so as not to consume any portion of Lot D or Lot E.[4]

By a series of deeds delivered and recorded later in 1971, Vibro conveyed the other four lots[5] to Elga Realty Trust. It will serve no useful purpose to detail these conveyances and the erroneous plan and record references and the inconsistent descriptions of the easements which characterize them. These errors do not, as the plaintiffs contend, mislead, but would place an examiner on notice to look for clarification. Such is the case, for example, with a deed that describes a

---

[2] Lot D was later divided into Lot D-1 and Lot D-2.

[3] We so deduce from the record because the December 10, 1970, plan appears in the books of the South Middlesex registry of deeds on the page immediately following that on which the deed of Lot E from Vibro to Ford appears.

[4] After it swings away, westerly, from Lot E, the driveway easement increases in width to fifty feet.

[5] Following the metes and bounds on the 1970 plan.

lot by dimensions which appear in the December, 1970, plan, refers to that plan, but makes a record reference to the registry book and page on which the April, 1969, plan appears. Clarification came in part in May, 1973, when confirmatory deeds corrected the erroneous record references.

It is apparent that prior to any conveyance by it, Vibro evidenced an intention to have a common driveway serve the lots it was carving from its acreage. *Snow* v. *Van Dam*, 291 Mass. 477, 482 (1935). *Rahilly* v. *Addison*, 350 Mass. 660, 663 (1966). The conveyance by Vibro to Ford of an easement to be used "in common with the grantor and its assigns" would, in view of the March, 1969, plan, refer to all the adjoining land retained by Vibro.

The plaintiffs base their attempts to bar the defendant bank, the current owner of Lot D-2, from using the driveway easement which it abuts on the ground that Vibro's deed to Elga of Lot D (see n.2) failed to mention the easement. The failure to mention the driveway easement, however, does not extinguish it in light of the prior recordation of the plan by the grantor which showed the easement. *Lipsky* v. *Heller*, 199 Mass. 310, 315-316 (1908). See generally *Wellwood* v. *Havrah Mishna Anshi Sphard Cemetery Corp.*, 254 Mass. 350, 354-355 (1926). In a conveyance of real estate all easements belonging to the granted estate are included in the conveyance unless the deed states the contrary. G. L. c. 183, § 15. *Melville Shoe Corp.* v. *Kozminsky*, 268 Mass. 172, 179 (1929).

No consequence attaches to the relocation of so much of the driveway easement as was located between Middlesex Turnpike and Lot E from astride the boundary between Lot C and Lot D, as was the case in the 1969 plan, to a position entirely within Lot C. So long as Vibro owned the land on either side of the easement it could make changes in it, provided they were consistent with the rights of the owner of Lot E. *Wellwood* v. *Havrah Mishna Anshi Sphard Cemetery Corp.*, 254 Mass. at 354.

The plaintiffs shall be assessed double costs.

*Judgment affirmed.*