BARRY C. BROOKS & others vs. CAPITOL TRUCK LEASING, INC.
& another.[1]

Suffolk. January 14, 1981. — April 26, 1982.

Present: ARMSTRONG, PERRETTA, & KASS, JJ.

Easement. Deed, Construction. Real Property, Easement.

In an action by the owners and tenants of two parcels of industrial land
    against the owner and tenant of an adjoining parcel to compel the lat-
    ter to remove obstructions from the easterly access to a right-of-way
    easement claimed by the plaintiffs over the defendants' land, which
    also contained an unobstructed westerly access, there was no error in
    ordering the defendants to remove the obstructions from the easterly
    access, where it appeared from all the circumstances that the plain-
    tiffs' predecessor in title in conveying part of a parcel to the defendant
    owner had intended to reserve an easement in both the easterly and the
    westerly access. [474-479]

CIVIL ACTION commenced in the Land Court Department
on February 8, 1979.

The case was heard by Randall, J.

Steven M. Brody for the defendants.
James A. Antonucci for the plaintiffs.

ARMSTRONG, J. This is an action of an equitable nature
brought in the Land Court by the owners and tenants of
two parcels of industrial land, located in Everett, against
the owner and the tenant of an adjoining parcel to compel
the latter to remove obstructions from a portion of a right-
of-way easement claimed by the plaintiffs over the defend-
ants' land. A preliminary injunction required the defendants
to remove the obstructions during the pendency of the ac-
tion. The judge ruled in the plaintiffs' favor with respect to
the existence of the claimed easement, and the defendants
appealed from the ensuing judgment.

[1] D & E Realty Co., Inc.

The owners of all three parcels derived their titles from a common grantor, the Parkway Corporation, which prior to August 13, 1963, held all the land comprising the three parcels along with certain other land as an undivided registered parcel. On the date mentioned the Parkway Corporation conveyed to the defendant owner, D & E Realty Co., Inc. (D & E), a parcel "shown as Lot #3 . . . as shown on Plan No. 1855H," together with a smaller parcel of no present concern. Included in the deed were two paragraphs which give rise to the present controversy:

> "The Grantor [i.e., Parkway Corporation] herewith grants to the Grantee [i.e., the defendant D & E], in common with the Grantor and its assigns, an easement along a forty (40') foot way as shown on the aforementioned plan [i.e., plan 1855H], for ingress and egress from Norman Street to the land of the Grantee and the remaining land of the Grantor.
> "The Grantor reserves for itself and its assigns an easement in common with the Grantee for ingress and egress from Norman Street to the land of the Grantee and the remaining land of the Grantor."

Figure 1 is a sketch (not drawn to scale) of the parts of plan 1855H which are relevant to this appeal. It will be observed that access from Norman Street to the parcels of D & E and the Parkway Corporation may be obtained by two routes which converge at the corner of the building depicted on lot 3 and then diverge again as one travels further north or west. The route, or segment of a route, which is in dispute here is the easterly access running from Norman Street to the point of convergence, designated on plan 1855H as "Way." All the parties agree that the plaintiffs, as successors in title to Parkway Corporation,[2] have a right to use the

---

[2] The plaintiffs' certificates of title give them the "right and easement to use, in common with others entitled thereto, all rights of way as shown

Brooks *v.* Capitol Truck Leasing, Inc.

## Figure 1

## Subdivision Plan of Land in Everett

Essex Survey Service
Frank C. Hancock, Surveyor
June 19, 1963

westerly access (designated on the plan as "easement") run-
ning from Norman Street to the point of convergence. D & E's
certificate of title describes the right or rights of way by ref-
erence to the deed.[3]

The undivided tract was acquired by the Parkway Corpo-
ration in 1962. It had been owned by the General Electric
Company. The tract was apparently (judging from the
plans in evidence) served by a Boston and Maine railroad
branch line with spur lines and was also served by wharves,
the tract bordering on the Malden River. The plans indi-
cate that access by road was limited to the Norman Street
frontage. Parkway's purpose appears to have been to make
the tract into a private industrial park. The city of Everett,
in which the greater part of the undivided tract lay, appar-
ently required, perhaps as a condition of subdivision, that
Norman Street be widened from forty feet to sixty feet
where it abuts the tract. Lots 1 and 2, shown in figure 1,
were dedicated to that purpose. The plan which reflected
the creation of those lots, 1855G, is not in evidence. So far
as can be ascertained from the plans which are in evidence,
plan 1855H, drafted to show the subdivision of lots 3 and 4,
was the first plan to depict either the easterly or westerly
access ways from Norman Street into the tract or the exten-
sions into the tract north and west of the point of their con-
vergence.

The evidence indicates that both the easterly and wester-
ly branches were used by trucks for ingress into and egress

on" plans which include the right or rights of way shown on plan 1855H:
i.e., both the segment designated "Way" and the segment designated "Ease-
ment." The later plans use "Way" to designate both segments and, as will
be discussed later in this opinion, show them extended to the north and west
of the intersection to meet each other in a continuous loop.

[3] "There is appurtenant to the above described land an easement along
the forty foot way shown on said plan [i.e., plan 1855H] in common with
others entitled thereto, more particularly set forth in Document No.
400531 [i.e., the deed from Parkway Corporation to D & E, quoted in
relevant part in that text].

"The above described land is subject to the reservation as to easement,
more particularly set forth in Document No. 400531."

from the industrial park from 1963, the year D & E acquired lot 3, until some time in the mid-1970's.[4] The owner of the land to the west of the westerly branch had a hardtopped driveway parallel to and abutting the westerly branch. During or shortly before 1977, the defendants put fill on the westerly branch to bring it to grade with the abutting driveway and then paved it. Having improved the westerly branch, the defendants then obstructed the easterly branch totally by fencing it off, so as to be able to use the land between building 3 and Norman Street as a truck and car parking area for purposes of their business exclusively.

The defendants' position at trial and here appears to advance either of two constructions of the easement reserved by the grantor Parkway. The first is that the reservation language in the deed refers to "an easement" in the singular and does not identify that easement by reference to any plan; hence, the defendants argue, their obligation is to keep a single means of access from Norman Street open over their lot, and they have done this by improving and keeping open the westerly branch. Compare *Carls* v. *Lexington Fed. Sav. & Loan Assn.*, 11 Mass. App. Ct. 87, 90 (1980). The second construction is that, if the deed is to read as identifying the location of the single easement on plan 1855H, it should be read as identifying the westerly branch, which the plan labels "Easement," rather than the easterly branch, which the plan labels "Way." In aid of both constructions the defendants urge that uncertain language in a deed is to be construed most strongly against the grantor and his successors in title (citing *Atkins* v. *Bordman*, 2 Met 457, 463

---

[4] One Bornstein, an officer of both defendants, testified that the easterly branch was not used by trucks, but in the course of cross-examination and redirect examination he explained that what he meant was that the easterly branch was not used precisely as it is shown on the plan; that, due to a fence near building 3 (left from the time General Electric owned the tract), a pile of timber and parked cars, the traffic entering at the easterly branch from Norman Street had to follow a route about six or eight feet west of the easterly way as depicted on plan 1855H. The testimony of other witnesses was simply that the easterly way was in continuous use until the defendants blocked it off in 1977.

[1841]) and in favor of freedom of the land from servitude (citing *Hemenway* v. *Bartevian*, 321 Mass. 226, 229 [1947]). The defendants rely most heavily on *Regan* v. *Boston Gas Light Co.*, 137 Mass. 37 (1884), for the proposition that a deed which makes reference to a plan does not by that reference alone impliedly grant or reserve rights of way shown on the plan.

The defendants' contentions make sense enough if we confine our attention to the reservation paragraph of the 1963 deed and look only at the portions of the rights of way depicted on plan 1855H which extend south from their common area to Norman Street. But we cannot properly so limit our focus. The reservation paragraph cannot be read in isolation from the granting paragraph, because all parts of the instrument are to be read consistently, if possible, to ascertain the intent of the draftsman. See *Lindsay* v. *Board of Appeals of Milton*, 362 Mass. 126, 131 (1972). Nor can we focus simply on the easterly and westerly branches; they lie wholly on the land conveyed to D & E in fee, and a grant of an easement to D & E over its own fee would be a nullity. Cf. *O'Malley* v. *Commissioner of Pub. Works of Boston*, 340 Mass. 542, 545 (1960).

The granting paragraph defines the easement it grants simply as "an easement along a forty . . . foot way as shown on [plan 1855H], for ingress and egress from Norman Street . . . ." The easterly and westerly branches, with their extensions, both fit that description. Forced to select, one might well choose the easterly branch, treating the word "easement" in its generic sense and "way as shown" on the plan as reference to the right of way denominated by the plan as "Way." The reservation paragraph, by contrast, simply uses the word "easement," which suggests, the defendants argue, the westerly branch, because it is identified on the plan as "Easement" rather than "Way."

That interpretation supports the defendants' position but creates many anomalies. It assumes, of course, that the plan is to be taken as depicting two separate (but intersecting) rights of way and concludes that Parkway granted

D & E only the one marked "Way" and reserved for itself and its assigns only the one marked "easement." That conclusion is untenable, however, because it is at variance with the plainly stated intention of the draftsman that the easement granted to D & E was to be used in common with Parkway and its assigns and that the easement reserved by Parkway was to be used in common with D & E.

A more likely construction — indeed, that adopted by the judge — is that the granting paragraph was in effect both a grant and a reservation in one of the ways and that the reservation paragraph was in effect both a reservation and a grant in the other of the ways. The principle difficulty with that construction is that it seems implausible that the draftsman would have used reservation language in one instance and grant language in the other if he intended to deal with both branches in the same manner. A third possibility is that the grant paragraph and the reservation paragraph were meant to refer to the same right of way and that the reason for using both the language of grant and the language of reservation was that a portion of the way lay on the land conveyed to D & E and another portion lay on land retained by Parkway. But if that single right of way is thought to include only the westerly branch or the easterly branch, but not both, we are left with the question why the plan (1855H), drawn for the specific purpose of showing the layout of lot 3 (or lots 3 and 4), should have depicted both branches. It is not likely to have been the result of inadvertence: plan 1855H, as explained earlier, was apparently the first depiction of either of the rights of way on the successor plans to the key plan filed at the time of original registration.

In our view the draftsman of the deed probably thought of the right of way labeled "Way" and the right of way labeled "Easement" as constituting, in effect, a single right of way branching out to meet Norman Street at two different points, and branching out in two directions to give access to Parkway's reserved land. Because of the area of convergence, it is not implausible to think of the way, with offshoots, as constituting a single right of way. The deed stated

the purpose of the way (or ways) as being not only to pro-
vide access to Norman Street — something which was of lit-
tle importance to D & E — but also to provide access for
D & E to "the remaining land of the Grantor," which, as
explained earlier, was apparently served by rail and ship-
ping facilities. The latter purpose would be best served by
interpreting the deed as having given D & E access to the
reserved land by both routes. There is nothing in this con-
struction which creates a conflict with the subsequent devel-
opment of the two routes into a continuous, circumferential
loop through the industrial park,[5] and, indeed, the loop
makes it easier to think of the separate branches shown on
plan 1855H as constituting, in effect, a single right of way
depicted only in part on that plan. It should be noted, also,
that this interpretation (or, for that matter, the one adopted
by the judge) is in accord with the practical construction
put on the deed by the parties, as trucking used both
branches continuously from the date of conveyance in 1963
until the interruption in 1977. *Oldfield* v. *Smith*, 304 Mass.
590, 600 (1939). *Murphy* v. *Donovan*, 4 Mass. App. Ct.
519, 527 (1976).

While we think that the single-way construction adopted
above reflects what was probably in the draftsman's mind,
we would not reach a different result if the plan were inter-
preted as depicting two different (although intersecting)
ways. The controlling case would be *Dubinsky* v. *Cama*,
261 Mass. 47 (1927). There the plaintiff's certificate of title
indicated that his land was subject to a right of way (in the
singular) shown on a plan, and the plan showed two rights
of way across the plaintiff's land which answered to that
description. The court held that "[t]he principle of con-
struction governing the interpretation of deeds is that where
mention is made of an easement . . . and reference is made
in the deed to a plan, the plan must be considered as a part
of the deed, so far as is necessary to aid in description and

---

[5] The circumferential loop was first depicted in 1964 or 1965, on plan
1855I, which showed the subdivision of lots 5, 6, 7, and 8.

identification of the easement . . . . The circumstance that in the plaintiff's certificate of title the words used are subject 'to the right way' does not identify either one or the other passageway as shown on the plan. Since they apply to one as well as to the other, and since reference is made to the plan, the lot is subject to the easements of both ways shown thereon . . . ." *Id.* at 53-54.

The *Dubinsky* case cannot be distinguished on the ground that in the D & E deed the reservation-of-easement sentence does not itself refer to the filed plan. D & E's deed (and the certificate of title incorporating it) refers to the plan not only to show the location of the defendants' lot but also, in the sentence immediately preceding the reservation sentence, to identify the right of way granted to D & E "in common with the Grantor and its assigns." The intention of the draftsman was unmistakably to reserve for the latter the use of a right of way shown on the plan, and the plan, including as it does two rights of way fitting that description, is to be read as a part of the deed. No rights of way were lost or gained by the language of D & E's certificate of title, which described the right (or rights) of way by reference to the deed.

It follows that the judge was correct in ordering the defendants to remove obstructions from the easterly branch.

*Judgment affirmed.*