NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1049

HEIDI A. CONNELLY, trustee,[1] & others[2]

vs.

JODEE C. DOYLE, trustee,[3] & others.[4]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Defendant JoDee C. Doyle, trustee of the Four Ninety-Four NEB Realty Trust (Doyle), owns an oceanfront parcel of registered land (locus) in Salisbury. In consolidated actions pursuant to G. L. c. 185, § 114, a Land Court judge concluded that each of the lots owned by the plaintiffs benefits from an implied easement to pass and re-pass over the locus by foot, and that the easement appurtenant to the lot owned by plaintiffs

---

[1] Of the Girls' Realty Trust.

[2] Natalie S. Lucas and Donna M. Bates, trustees of the 5-D Realty Trust; Diane M. LaRocque, trustee of the Diane M. LaRocque Revocable Living Trust; Michael C. Faro; and Elizabeth Ann Faro, individually and as trustee of the Navanod Revocable Living Trust under declaration of trust dated January 9, 2004.

[3] Of the Four Ninety-Four NEB Realty Trust.

[4] Alfred Fisichelli, Joseph Fisichelli, and Steven A. Fisichelli, none of whom participated in this appeal.

Natalie S. Lucas and Donna M. Bates, trustees of the 5-D Realty Trust (Lucas and Bates), also permits passage over the locus by vehicle. Doyle appeals, arguing that the judge erred in concluding that the plaintiffs' lots benefit from those easements. We affirm.

Background. "Because the judge issued h[is] decision on a case stated basis, we review it de novo, drawing our own inferences of fact and reaching our own conclusions of law." Hickey v. Pathways Ass'n, 472 Mass. 735, 743 (2015). We set forth the facts found by the judge, supplemented by our own review of the documentary evidence.

In Doyle v. Commonwealth, 444 Mass. 686, 687-690 (2005), a case involving among others these same parties, the court set forth in detail the development by the Salisbury Beach Associates (SBA), a trust, of the properties involved in this case. As relevant here, in 1913 the Land Court issued a decree of registration to the SBA for a tract of land along Salisbury Beach, as depicted on twenty-seven sheets comprising Land Court Plan 3200A. That plan depicted the locus as a single numbered lot -- lot number 344 on sheet 3.

In 1920, the SBA filed a series of plans which removed particular lots and replaced them with a consistent pattern of side streets running east and west from the State highway. The eastern streets led to the sandy beach and Atlantic Ocean, and

2

the western streets led inland.  One of those plans, numbered 3200XV (1920 plan), depicted certain numbered lots in Blocks G, P, and Q that became the plaintiffs' lots.  The 1920 plan bore an instruction that "[s]eparate certificates of title may be issued for . . . the numbered lots in Blocks G, H, O, P & Q as shown hereon."  As to the locus, the 1920 plan did not depict it as a lot, but as "8th St. East," one of the side streets leading to the beach from the State highway.  On the 1920 plan, the locus had no lot number and was between blocks G and H and not within any block.

In 1992, Doyle bought the locus from the SBA for $25,000.  The deed denoted the locus as "8th Street East," and stated that its boundaries were located as shown on the 1920 plan.  The 1920 plan depicts the northern boundary of the locus as abutting a lot fronting on the State highway that is now owned by plaintiff Heidi A. Connelly, trustee of the Girls' Realty Trust (Connelly), as well as the oceanfront lot now owned by Lucas and Bates.  As depicted on the 1920 plan, the locus had no eastern boundary, but faces Salisbury Beach and the Atlantic Ocean.  To the south the locus abuts lots now owned by Alfred Fisichelli, Joseph D. Fisichelli, and Steven A. Fisichelli (the Fisichellis).  As depicted on the 1920 plan, the locus had no western boundary, but faces the State highway.

3

The 1920 plan also depicts the lots now owned by plaintiffs Diane M. LaRocque, trustee of the Diane M. LaRocque Revocable Living Trust (LaRocque), and Michael C. Faro and Elizabeth Ann Faro, trustee of the Navanod Revocable Trust (the Faros), which are on the other side of the State highway, also called North End Boulevard.  Each of the five plaintiffs' certificates of title describes their lots with reference to the 1920 plan. None of the plaintiffs' certificates of title contain express language documenting an easement across the locus.

Apparently based on Doyle's 1992 deed and without examination of the 1920 plan, an assistant recorder issued a transfer certificate of title for the locus.  See Doyle, 444 Mass. at 688-689 & n.5.  The Land Court subsequently determined that the transfer certificate of title was "clearly erroneous" because it purported to set forth boundaries for the locus based on the 1920 plan, which did not delineate any eastern or western boundaries.  Id. at 690.  The Supreme Judicial Court concurred. Id. at 696-697.

On July 8, 1998, a new plan was registered (1998 plan) that depicts the locus with eastern and western boundaries and the lot number 843, and bears an instruction, dated February 5, 2016, that "[s]eparate certificates of title may be issued for land shown hereon as Lot 843."  On February 16, 2016, the recorder issued a new transfer certificate of title to Doyle

4

which describes the locus with reference to the 1998 plan and states that Doyle's ownership of the locus "is subject to the rights of others, if any, to pass and re-pass over said land." Connelly, Lucas, and Bates then petitioned the Land Court pursuant to G. L. c. 185, § 114, to amend Doyle's certificate of title to reflect their rights "to pass and repass and to utilize the [locus] as a road." LaRocque and the Faros filed a similar petition, seeking to amend Doyle's certificate of title to recognize their right "to pass and re-pass over the Locus to access Salisbury Beach and the Atlantic Ocean," without reference to vehicular access.

By agreement of the parties, the consolidated cases were tried on the documentary evidence. The judge also took a view. After trial, the judge allowed the plaintiffs' motion to supplement the record with documents including a 1917 pamphlet advertising the SBA development. The judge determined that the plaintiffs had proven that they had implied easements to pass and re-pass over the locus by foot.[5]

---

[5] The judge concluded that the lots owned by the Fisichellis, who were named as defendants in the action brought by Connelly, Lucas, and Bates, which abut the locus to the south, also benefited from easements over the locus. Doyle moved for reconsideration of that ruling on the grounds that the Fisichellis had voluntarily terminated their easement over the locus. The judge allowed the motion, concluding that the Fisichellis' lots were excluded from the group of lots which enjoy easement rights over the locus. The Fisichellis have not appealed, and so we do not consider that issue.

5

Abutters Connelly, Lucas, and Bates moved for relief from the judgment, or in the alternative to amend the judgment, arguing that their lots' easements should permit vehicular as well as pedestrian access over the locus. After Doyle filed a proposed order that would limit pedestrian access to two four-foot wide pathways along either side of the locus, LaRocque and the Faros objected to that proposed layout and supported the abutters' motion for reconsideration. The judge allowed the abutters' motion in part, amending the judgment to provide that the lot owned by plaintiffs Lucas and Bates is benefited by an appurtenant right to pass and re-pass over the locus both by foot and by vehicle, but not including the right to park vehicles on the locus. As to the lots owned by Connelly, LaRocque, and the Faros, the judge concluded that they enjoy "an appurtenant right to pass and re-pass by foot over" the locus. Doyle appealed.

Discussion. Implied easements over the locus appurtenant to plaintiffs' lots. As those claiming the benefit of easements over the locus, the plaintiffs bear the burden of proving the existence of the easements appurtenant to their lots. Hickey, 472 Mass. at 753-754, citing Reagan v. Brissey, 446 Mass. 452, 458 (2006). Generally, a holder of a certificate of title to registered land takes "free from all encumbrances except those noted on the certificate." G. L. c. 185, § 46. See Doyle, 444

6

Mass. at 693. Massachusetts courts have recognized two exceptions to this rule: "(1) if there were facts described on [Doyle's] certificate of title which would prompt a reasonable purchaser to investigate further other certificates of title, documents, or plans in the registration system; or (2) if the purchaser has actual knowledge of a prior unregistered interest." Id., quoting Jackson v. Knott, 418 Mass. 704, 711 (1994). In the Land Court, the parties agreed that the second Jackson exception did not apply, and the judge did not consider it.[6] We similarly focus on the first Jackson exception.

The judge determined that based on the 1920 plan referenced in the deed for the locus, Doyle "would have and should have [been] prompted . . . to consider whether the [SBA] had intended to give rights to others in the subdivisions over the land she was buying from the successors to the [SBA] -- a parcel plainly labeled on the guiding Land Court plan as a street." The judge concluded, "The inference is strong, and I draw it, that in this

---

[6] We note that, by the time her valid certificate of title was registered in 2016, Doyle certainly knew that the plaintiffs claimed easements over the locus: they had objected to her petition to register her prior invalid certificate of title. See Doyle, 444 Mass. at 687. Moreover, the 2016 certificate of title noted that the locus "is subject to the rights of others, if any, to pass and re-pass over said land." As neither the parties nor the judge relied on the second Jackson exception, we do not reach the question whether it would have required proof of Doyle's actual knowledge in 1992 when she obtained the deed for the locus, or in 2016 when her certificate of title was registered.

community of lots sold for beach-focused vacation and recreational residential use, proximate and convenient beach access afforded to all the nearby lots was a driving factor in the development and sale of all the lots shown on the 1920 Plan."

Doyle contends that the judge erred, arguing strenuously that G. L. c. 185, § 46, prohibits an easement over registered land unless the easement is shown on the certificate of title. That is generally true, but the judge concluded that this case fell within the first Jackson exception, and we agree. Based on the information in the registration system, including the 1920 plan referenced in Doyle's deed, Doyle would have been expected to investigate whether others had easement rights over the locus. See Hickey, 472 Mass. at 759. The 1920 plan on its face would have given a purchaser reason to believe that others had easement rights over the locus. The 1920 plan labeled the locus as "8th St. East." The 1920 plan depicted, as the judge described it, "a network of roads, including a ladder-like carefully patterned system of side streets, at regular intervals interrupting the sequence of private lots and extending from the state highway to the beach"; the judge concluded that the layout was "akin to an easement by common scheme." Cf. Conway v. Caragliano, 102 Mass. App. Ct. 773, 783-784 (2023) (in context of plans depicting development of lots with evenly spaced ways

8

to the beach, deed referring to lot as benefiting from easement rather than being encumbered by it sufficient to put purchaser on notice of others' easement rights).  The 1920 plan included the instruction that "[s]eparate certificates of title may be issued for . . . the numbered lots in Blocks G [and] H . . . as shown hereon," which would have led prospective buyers, including Doyle and the plaintiffs and their predecessors-in-title, to believe that the locus was not subject to the issuance of a certificate of title because it was depicted on the 1920 plan as lying between Blocks G and H and had no lot number.

Doyle argues that because none of the plaintiffs' certificates of title mention an easement over the locus, they cannot meet their burden.[7]  "[E]ven on registered land, there is no requirement that easements appurtenant, benefiting a lot, must be listed on the certificate of title."  Hickey, 472 Mass. at 753 n.26.  General Laws "c. 185 requires only easements to which the registered land is subject be set out in the

---

[7] For similar reasons, Doyle argues that an implied easement across the locus would violate the statute of frauds, which requires "an instrument in writing signed by the grantor" to assign an interest in land "unless . . . by operation of law." G. L. c. 183, § 3.  The argument is unavailing.  The 1920 plan, which was incorporated by reference into the deed for the locus and the deeds and certificates of title for the plaintiffs' lots, was "an instrument in writing"; further, implied easements were permitted "by operation of law" under cases including Hickey.

certificate of title.  Easements [benefiting] the property need not be noted."  Id., quoting Dubinsky v. Cama, 261 Mass. 47, 56-57 (1927).

Doyle urges us to interpret Hickey, 472 Mass. at 760, to preclude a finding of implied easements across the locus for the benefit of the plaintiffs' lots unless there is proof of at least one express easement granted to a lot owner somewhere in the subdivision.[8]  The judge declined to "read Hickey as taking such a narrow pathway through this fraught issue."  After noting that, in Hickey, there was evidence that certain lots did enjoy

---

[8] The record before us does show at least two instances in the registration system where the SBA seems to have recognized easement rights over the locus to access the beach.  First, in 1933, when the Commonwealth took title to the length of Salisbury Beach, its certificate of title referred to a plan numbered 3200-46 and specified that the Commonwealth's title to the beach was "subject to rights of way thereover between the respective lots shown on said plan and the Ocean."  That plan is not in the record before us, but the Supreme Judicial Court noted that it depicted "8th St. East," the locus, as lying "between the respective lots . . . and the Ocean."  Doyle, 444 Mass. at 688 n.4.

Second, in 1965, the SBA granted to the Willows Realty Trust "the right to use in common with others any ways to the beach which are in the vicinity or adjacent to . . . Eighth Street West," which would include the locus.  At argument before the Land Court judge, the parties disputed whether the Willows Realty Trust property was within the SBA development, and the record before us contains no deed or certificate of title showing what property the Willows Realty Trust owned.  Because we agree with the judge's interpretation of Hickey and with his conclusion that the evidence of the SBA's intent to convey easements over the locus appurtenant to the plaintiffs' lots was "strong," we need not rely on these instances.

10

some express easement rights upon other lots, the judge went on to point out that there also existed a plan depicting "an integral scheme of ways in a neighborhood, providing access to the waterfront, every three or four lots." Hickey, 472 Mass. at 749. The judge then went on to observe that, in Hickey, the purpose of that "integral scheme" -- "to provide waterfront access to inland lots" -- was deemed by the Supreme Judicial Court to be "obvious on the face of the plans, and would have been [obvious] to those purchasing" the lots at issue there. Id. After making these observations, the judge concluded that in this case the SBA's intention to create easement rights across the locus for the benefit of the plaintiffs' lots was "even more obvious on the face of the plans" than in Hickey (quotation omitted). See Bacon v. Onset Bay Grove Ass'n, 241 Mass. 417, 423 (1922) (where land conveyed by reference to plan, easement may be created if "shown to be intended by the parties to the deed," considering "the entire situation at the time of the conveyance"). We concur with the judge's interpretation of Hickey and his analysis of the documentary evidence in this case.

Easements appurtenant to abutters' lots, including vehicular access for lot owned by Lucas and Bates. Doyle argues that the judge erred in concluding that the lots owned by Connelly, Lucas, and Bates enjoy pedestrian easements over the

11

locus, and the easement appurtenant to the beachfront lot owned by Lucas and Bates also permits vehicular access.

As discussed above, we have concluded that all five plaintiffs' lots benefit from implied easements for pedestrian access over the locus. As to Doyle's arguments that the lots owned by Connelly, Lucas, and Bates do not enjoy easements over the locus, we further note as follows. As abutters to the locus, Connelly, Lucas, and Bates have even stronger claims than the other plaintiffs to implied easements over the locus.[9] Where "a seller conveyed registered land abutting a way, the conveyance described the ways as a boundary, and the deed referenced a subdivision plan on file in the land registration office showing the way," a subsequent purchaser such as Doyle may be estopped from "deny[ing] the existence of such street or way." Hickey, 472 Mass. at 758 n.30, quoting Murphy v. Mart Realty of Brockton, Inc., 348 Mass. 675, 677-678 (1965). See Duddy v. Mankewich, 75 Mass. App. Ct. 62, 70 n.13 (2009); Lane v. Zoning Bd. of Appeals of Falmouth, 65 Mass. App. Ct. 434, 437

---

[9] Connelly, Lucas, and Bates do not contend that they own a fee to the midline of the locus. The judge concluded that when the SBA sold the lots, it retained the fee in the locus. We note that at the time of the 1920 plan, the legal question whether a deed to land bounded by a way was presumed to extend to the midline of the way or only to its edge was somewhat uncertain. See Erickson v. Ames, 264 Mass. 436, 442-445 (1928) (collecting cases). See also Conway, 102 Mass. App. Ct. at 780-781.

12

(2006).  The lots owned by Connelly, Lucas, and Bates fit that description.

To try to rebut the easement by estoppel theory as to the abutting lots owned by Connelly, Lucas, and Bates, Doyle makes two arguments.  First, she contends that because the two lots now owned by Connelly, Lucas, and Bates were deeded by the SBA in 1936 to a single owner, Albert Alexander, who had access across those lots both to the beach and to the road, the SBA could not have intended also to grant him a "duplicate" easement over the locus.  Until 1997, both of those lots were owned by William and Natalie Donahue, the parents of Connelly, Lucas, and Bates, and during the Donahues' ownership each of those lots had access both to the beach and to the road by crossing the other lot, if necessary.[10]  As the judge noted, in the 1920 plan the SBA chose to lay out the two lots as distinct lots, with different restrictions for each, and contemplating the construction of a house and garage on each, which "naturally implies an intention to treat each lot, from the time of their creation, as separate for the purpose of access."  The mere fact that two lots were previously owned in common, or that the

---

[10] In the Land Court, Doyle argued that by separating the lots and conveying them to different daughters, Natalie Donahue "caused" the "problem," "effectively landlocking" the oceanfront lot owned by Lucas and Bates.  Doyle does not raise that argument on appeal, and so we do not consider it.

13

owners may have had other ways to access the beach, does not preclude the lots from enjoying easements over the locus.  See Melrose Fish & Game Club, Inc. v. Tennessee Gas Pipeline Co., 89 Mass. App. Ct. 594, 597 (2016).  "A way created by estoppel . . . 'is not a way by necessity, and the right exists, even if there be other ways, either public or private, leading to the land.'"  Casella v. Sneirson, 325 Mass. 85, 91 (1949), quoting New England Structural Co. v. Everett Distilling Co., 189 Mass. 145, 152 (1905).

Second, Doyle argues that the Donahues abandoned any easement they may have had over the locus when they erected a chain-link fence on the boundary between their lots and the locus.  In their answers to interrogatories, Connelly and Lucas averred that the "fence was erected in the early to mid 1980's."  The judge found that the fence was erected "in the mid-1980s," and that "approximately a decade" passed between its installation and 1996, when the first case contesting Doyle's title to the locus was filed.  The judge concluded that period was not long enough to show extinguishment of the easement by abandonment.  Having reviewed de novo the documentary evidence, we concur.

For the construction of a fence by the owner of a lot benefiting from an easement to cause abandonment, the fence must be in place long enough to "conclusively and unequivocally

14

manifest[] either a present intent to relinquish the easement or a purpose inconsistent with its further existence."  Dubinsky, 261 Mass. at 57.  As the judge pointed out, even the longest duration argued by Doyle in the Land Court -- fifteen years -- fell short of the lengths of time held sufficient by Massachusetts courts to show abandonment.[11]  See Lasell College v. Leonard, 32 Mass. App. Ct. 383, 390-391 (1992) (fence in place for twenty-three years resulted in abandonment).  See also Cianciulli v. Marlowe, 330 Mass. 410, 413 (1953) (right of way to pond extinguished by nonuse for more than twenty years, coupled with adverse use of servient estate).  Contrast 107 Manor Ave. LLC v. Fontanella, 74 Mass. App. Ct. 155, 160 (2009) (easement abandoned, where easement holders never took steps to remove stone wall blocking access to it since at least 1940, engaged in conduct inconsistent with their right to use it, and it was "useless" and "[did] not provide access to anything").

As for Doyle's claim that the judge erred in determining that the beachfront lot owned by Lucas and Bates benefits from an easement over the locus for vehicular access, it is

---

[11] On appeal, Doyle argues that the fence was in place for "at least 30 years," apparently counting all of the time until 2015, when certain photographs were taken that were admitted in evidence at trial.  We agree with the judge that by 1996, when the first action contesting Doyle's title was filed, Doyle was on notice that the fence was not a conclusive and unequivocal manifestation of the abutting plaintiffs' intent to abandon the easement.  See Dubinsky, 261 Mass. at 57.

15

unavailing.[12]  The judge concluded that the SBA would not have

intended to create a beachfront lot without vehicular access

over the locus it abutted and which was labeled on the 1920 plan

as a "street," "a term which naturally and traditionally implies

passage by vehicle."  The record does not support Doyle's

argument that the SBA did not intend for the lot now owned by

Lucas and Bates to have vehicular access over the locus.  See

Conway, 102 Mass. App. Ct. at 787 n.13 (evidence supporting

easement for vehicular access included the "width of the

shoreway, its proximity to the ocean, . . . and the fact that

vehicular use was common when the right of way was granted").

Admission of 1917 advertisement.  Doyle also contends that

the judge erred in admitting in evidence a 1917 advertisement

for the SBA development because it was not contained within the

registration system.

At trial, Doyle argued that cases interpreting whether

implied easements existed for beach access turned on whether

_____

[12] Connelly, who owns the lot abutting the locus that fronts the
State highway, joins Lucas and Bates in arguing that the fifty-
foot width of the locus and the "1920 . . . advent of the State
Highway and the affordable automobile" show that the SBA
intended for the easement appurtenant to her lot to include
vehicular as well as foot access over the locus.  However,
Connelly did not appeal from the judge's denial of her motion to
reconsider so much of his order as denied her vehicular access.
"As [Connelly] failed to file a cross appeal, we will not
consider [her] arguments in this regard."  Scott v. Boston Hous.
Auth., 64 Mass. App. Ct. 693, 695 (2005).

there were advertisements for the property that mentioned the beach.  See Reagan, 446 Mass. at 459 (easement based on evidence including advertisements); Houghton v. Johnson, 71 Mass. App. Ct. 825, 832-835 (2008) (no easement; no advertisements in evidence).  In response, the plaintiffs argued that the information in the registration system, including the word "beach" in the name of the development and the depiction of the Atlantic Ocean on the 1920 plan, sufficed to prove that the SBA intended to provide lot owners with beach access across the locus.

After trial, the plaintiffs moved for leave to supplement the record with documents including a 1917 advertisement.  After a hearing, the judge allowed the motion.  Neither the plaintiffs' motion nor the transcript of the hearing is included in the appendix, and so the record before us does not contain any evidence as to where that advertisement came from.[13]  The 1917 advertisement described the SBA development as "[f]our miles of brilliant, dazzling surf on clean white sand.  Hundreds of summer cottages with waves breaking almost at the doorsteps." The judge quoted that language in his memorandum of decision.

---

[13] As appellant, it was Doyle's obligation under Mass. R. A. P. 18 (a), as appearing in 481 Mass. 1637 (2019), to include materials "which are essential for review of the issues raised on appeal."  Cameron v. Carelli, 39 Mass. App. Ct. 81, 84 (1995), quoting Shawmut Community Bank, N.A. v. Zagami, 30 Mass. App. Ct. 371, 372-373 (1991), S.C., 411 Mass. 807 (1992).

17

We review the judge's evidentiary ruling for an abuse of discretion, i.e., "a clear error of judgment in weighing the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives" (quotation and citation omitted). L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014). Even assuming that the 1917 advertisement came from outside the registration system, we cannot say that the judge abused his discretion in admitting it in evidence. See St. George's Ebenezer Primitive Methodist Church of Methuen v. Primitive Methodist Church of the U.S. of Am., E. Conference, 318 Mass. 723, 725-726 (1945) (to rebut claim that former owner's conveyance of registered land was scrivener's error, Land Court properly admitted letter from former owner stating his intent for use of locus). See also Mass. G. Evid. § 803 (17), (20) (2023). In any event, the 1917 advertisement was not particularly prejudicial. It conveyed, in somewhat more flowery language, what was apparent from the face of the 1920 plan: that the SBA was selling hundreds of lots in proximity

18

to -- and with access to -- the Atlantic Ocean and Salisbury Beach.

Decision entered October 15, 2019, affirmed.

Order on motions for reconsideration entered July 1, 2022, affirmed.

By the Court (Sacks, Grant & Smyth, JJ.[14]),

*Joseph F. Stanton*

Clerk

Entered:  September 6, 2023.

---

[14] The panelists are listed in order of seniority.