PATRICK J. GREENE & others *vs.* PATRICK CANNY.
PATRICK CANNY *vs.* PATRICK J. GREENE & others.

Suffolk.    April 19, 1883. — March 14, 1884.

The owner of a parcel of land in a city, abutting on one side on a public street
and on the other three sides on lands of other persons, opened a private way
from the street on one side of his land to the rear thereof, and divided the
remaining land into several lots.  These lots he sold to different persons, giving,
by deed, to the purchaser of each lot a right of way in the private way, and
imposing upon him the duty of keeping a proportionate part of the way, and of
a drain under the same, in repair.  *Held,* that the grantor retained only a barren
fee in the way; and that neither he nor his assignees in insolvency could, after
the sale of the lots, convey to the owner of other land abutting on the way any
right therein.  *Held, also,* that the owner of a lot having a right in the way
could not, by the purchase of a lot of land either abutting on the way or on
his other land, acquire any right of way from such land so purchased to the
private way.

A. owned a lot abutting on a private way, to which was annexed a right of way
therein; also another lot abutting on the way, and a third lot which adjoined
the first-named lot.  The two lots last named did not have annexed to them
any right in the way.  A. removed a fence between the second lot and the way,
also a wall between the first lot and the third, and used the way for the benefit
of the second and third lots.  *Held,* that the owners of other lots on the way,
and having rights therein, could join in a bill in equity against A.  *Held, also,*
that, on such bill, the court would compel A. to rebuild the fence, but would
not compel him to restore the wall, although A. had no right to use the way by
passing to it from the third lot over the first.

THE FIRST CASE was a bill in equity, filed September 15,
1881, by Patrick J. Greene, John Paine, Clarissa A. Beaumont,
and Thomas McCormick, to restrain the defendant from opening
and using a way from the northeasterly end of Webster Court,
in Boston, into a lot of land, of which the defendant had a
lease, and which is marked No. 7 on a plan, a copy of which is
printed on the opposite page; and also to restrain him from
opening and using a way from Webster Avenue over the lot
marked *a* on said plan, and thence into Revere Place; and to
compel him to restore to their original condition a wall which
he had removed from the northeasterly end of Webster Court,
and a fence which he had removed from the northeasterly end
of lot *a* opposite to Revere Place.

THE SECOND CASE was a bill in equity, filed April 3, 1882,
to restrain the plaintiffs in the first case from interfering with

Canny's alleged rights, as·owner or lessee of estates bordering on Webster Avenue, in using Revere Place.

The two cases were heard together, before C. *Allen,* J., who ordered a decree to be entered for the plaintiffs in the first case, and for the defendants in the second case; and reported the cases for the consideration of the full court. The facts appear in the opinion.

*C. F. Donnelly,* for Canny.

*O. S. Knapp & C. D. Adams,* for Greene and others.

DEVENS, J. Revere Place was laid out in 1843 as a private way, or common court, by John Hall, who then owned the premises, for the benefit of seven lots owned by him, which abutted thereon, or had access thereto by a subordinate passage which formed a part of it. Of two of these lots, numbered 7 and 3, Canny is now respectively the lessee and owner, and his right to the use of the private way for their benefit is not in dispute. The plaintiffs Beaumont, Paine, and Greene are the owners respectively of lots numbered 4, 5, and 6, on Revere Place. As the claim of the plaintiff McCormick is entirely distinct, it will be convenient to treat the case at first as if the others were the only plaintiffs. Revere Place as laid out by Hall, delineated on a plan filed by him in the registry of deeds, and described in the deeds made by him, extended from Charter Street in a southwesterly direction about 120 feet along the southeasterly side of Hall's property, and terminated at the southwesterly end by a fence which was the boundary of his land, and separated it from a parcel known as the Ellis estate, now leased by Canny, who has there removed the original fence and erected another with a gateway therein. The Ellis estate fronts on Webster Avenue. As Revere Place was owned by Hall, it was for him to determine, when he laid it out, to what uses and to whose benefit it should be devoted. This being done, and the rights of grantees being fixed, neither he nor those who subsequently held his estate could afterwards do anything in derogation thereof. It is therefore important to ascertain whether Revere Place was laid out solely for the benefit of the seven lots, so as to exclude any similar rights therein in favor of other lots. That such was the scheme of Hall, and that, in pursuance of this and relying upon it, the plaintiffs obtained their respective

titles, quite clearly appears. The plan, which is referred to in each of the deeds, and which thus makes a part of them and of their description of the rights intended to be conveyed, shows that five of the lots directly abutted on Revere Place, while lots 1 and 2 had access thereto by a smaller passageway, of three feet in width, and that this was all the land of Hall abutting thereon or provided with any access thereto. The deeds to the plaintiffs, after the description of the boundaries, granted as follows: " Also with a right of way and drainage in said Revere Place, and drain under the same, into Charter Street, so called, which said place, six feet six and one half inches wide at the northeasterly end, and about nine feet wide at the southwesterly end, is to be forever kept open for the use of lots 1, 2, 3, 4, 5, 6, and 7, all on said plan." The grantees were further to pay "the whole expense of keeping so much of said Revere Place as lies in front of their respective lots in repair, and drain under the same, extending sixty feet from said Charter Street, as is not borne by the proprietors of lots 1, 2, 3, as is provided for by their deeds."

An examination of these deeds, and of those made by Hall of the other several lots, shows that the entire expense of keeping Revere Place in repair, as well as the drain under the same, was imposed upon these seven lots laid out by him, and was carefully adjusted between the same, so that each should bear what was deemed its proper proportionate share thereof.

It cannot be important that the grantor does not state in terms that he lays out the way solely for these lots, or that he does not by express words exclude any others from the benefits thereof. When he states that he lays it out for these lots, delineates it upon the plan, by which it appears that to some of them there was no access except by means of the way, and assesses upon them the whole expense of the maintenance of the way and drain, it must be inferred that the way and drain are to be maintained solely for the benefit of the parties interested therein, each for the other; that the owners are not to be subjected to the additional burdens which would be imposed upon them if others could obtain rights of way or drainage therein; that with the sale of the lots the scheme of the grantor is complete; and that he cannot convey to others such rights

in the way. If there were other beneficial uses than these, and consistent with them, to which the land could be put, such uses he could grant or make of it. If not, he would hold the title simply as a barren fee. To grant others than the owners of these lots rights of way, would be to grant obstructions of those which he had already granted. It would add to the expense of those who were to keep the way in repair, while their own enjoyment would be less convenient and beneficial as it might be more or less interfered with by the enjoyment of others. *Parker* v. *Nightingale*, 6 Allen, 341. *Killion* v. *Kelley*, 120 Mass. 47. *Kirkham* v. *Sharp*, 1 Whart. 323. *White's Bank* v. *Nichols*, 64 N. Y. 65.

The owner of the fee in the land retained no interest in it which would enable him to grant rights of way over the way to land which he never owned, and for which it was not designed. Canny cannot therefore justify his use of the way for the parcels other than lots 3 and 7, by reason of his deed from the assignees of Hall, who became insolvent after he had sold all the lots for which the way was laid out. There was nothing to pass to them which enabled them to grant such a right. The facts found show uses of Revere Place by Canny, and permitted or invited by him, which he was not authorized to make. The Ellis estate, which he now holds by lease, and which consists of a block of tenement houses, abuts on Revere Place; but this fact gives no right to such estate in this private way, any more than it does to the land over which such way is laid out. *Woodyer* v. *Hadden*, 5 Taunt. 125. *Rowland* v. *Bangs*, 102 Mass. 299. Canny's destruction of the fence, and the erection of another with a gateway therein, was an invitation to the use which since appears to have been made of it by his tenants and others. It is equally clear that Canny has no right to make use of the easement over Revere Place which is appurtenant to No. 7, for the purpose of going to or coming from land beyond, which abuts upon it or may be connected with such abutting land, or of thus obtaining access to buildings there erected which may be connected by removing walls or fences. Private ways are confined in their use to the purposes for which they are granted, and cannot be further extended by the grantees. When intended to give access only to particular premises, they

cannot be used to reach thereby other lands. Where one has a right of way to a three-acre close, he cannot use it to pass over such close from or to closes beyond, and is a trespasser if he enter upon the three-acre close for such purpose. *Davenport* v. *Lamson*, 21 Pick. 72. *Cotton* v. *Pocasset Manuf. Co.* 13 Met. 429, 433. *Atwater* v. *Bodfish*, 11 Gray, 150. *Parks* v. *Bishop*, 120 Mass. 340.

By taking down the wall which separated Webster Court, upon which there is a block of tenement houses owned by Canny, from lot 7, he has given access to lot 7, which access is availed of, and no reason is suggested for the removal of such wall except for the purpose of affording such access.

For the injury sustained by the action of Canny, equity is the appropriate remedy, and although the plaintiffs are not the owners of the fee in the way, yet, the implied restrictions on it being for their benefit and forming a part of a scheme in which they are alike interested, they may properly join in their bill. They are entitled to a decree which shall declare that there is no right of way belonging to Canny which authorizes him to pass, either himself or by his servants or agents, from the Ellis and Webster estates into Revere Place, and to invite others thus to pass. The fence which extended along the southwesterly line of the Hall estate, about nine feet of which was along the southwesterly end of Revere Place, there separated it from the Ellis estate. This fence is sufficiently shown to have belonged to the Hall estate, and the proprietors of the way were entitled to have it remain there for the protection of their private rights. One of them should not remove it for the purpose of opening the private way to the tenants of the Ellis estate, who had no rights therein. Having done so, he should be compelled to restore it. The fact that he erected another fence eight inches behind it, with a gateway therein, shows that his object was to provide himself and his tenants on the Ellis estate with an access to the private way to which neither he nor they were entitled. This fence he should be ordered to restore.

The brick wall which separated Webster Court from Canny's lot 7 we are not prepared to order him to restore. This was entirely on his own land, and divided one part of it from the other. While no right exists for himself or any one else to pass

from Webster Court over lot 7 to Revere Place, for the purpose of making use of it, yet Canny may lawfully remove any barrier between the parts of the land occupied by him, even if the effect of such removal may be to bring persons upon lot 7 who afterwards, without right, pass therefrom upon Revere Place. If he does this with the intent of inviting or inducing others thus to pass into and through Revere Place from lots beyond lot 7, he will act in violation of the rights of the plaintiffs; but we cannot order him to restore a wall which he may maintain or not in the proper use of his own land.

Nor do we deem it necessary that Canny should now be enjoined against the unlawful use of Revere Place by himself, his servants, or others acting by his invitation. The respective rights of the parties have been, we must believe, honestly in dispute. When those of the plaintiffs are fully declared by a decree of this court, it is not to be presumed that he will violate them.

The plaintiff McCormick is not entitled to a decree in his favor. He is the owner of an estate on Charter Street, and his land bounds northwesterly on Revere Place. He claims a right of way in Revere Place, through a deed from the assignees of Hall; but, as we have already stated, neither Hall nor his assignees could convey any such right. In rendering the decree appealed from, it was apparently not observed that McCormick is not an owner of one of the seven lots for whose benefit Revere Place was laid out. The fact that his land abuts on it is unimportant, and the grant made to him of a right of way therein by one Ritchie, to whom the fee in the way was granted by the assignees of Hall, was invalid. All that Ritchie obtained was the barren fee, as Hall himself could not convey any right of way. No rights of McCormick have therefore been affected by the claim made by Canny to a use of the way for other purposes than access to Nos. 3 and 7. The decree heretofore made in favor of the plaintiffs should be modified in conformity with this opinion, and the bill dismissed so far as McCormick is concerned.

For the reasons stated in considering the original bill, the decree dismissing the cross bill is affirmed.

*Decrees accordingly.*