DAVID J. MATTHEWS, THIRD, & another[1] *vs.* PLANNING BOARD
OF BREWSTER & others[2] (and a consolidated case[3]).

No. 07-P-1164.

Suffolk. April 16, 2008. - August 27, 2008.

Present: TRAINOR, SMITH, & MEADE, JJ.

*Subdivision Control,* Decision of planning board, Plan. *Easement. Deed. Real
Property,* Easement, Deed.

A Land Court judge properly upheld the decision of the defendant planning
board (board) denying approval of the plaintiffs' subdivision plan — which
included a proposed access road that would require vehicles to traverse the
roads in an abutting subdivision — until the plaintiffs obtained a modifica-
tion of the abutting subdivision's plan, where the board intended that the
abutting subdivision's roads would service only the lots created thereon
[462-464]; moreover, the judge correctly concluded that even though the
plaintiffs, as owners of one of the lots in the abutting subdivision, had the
benefit of an easement over certain of the abutting subdivision's roads, the
developers of the abutting subdivision could not grant the plaintiffs an
easement over that subdivision's roads for the benefit of the future owners
of the plaintiffs' proposed subdivision [464-466].

CIVIL ACTIONS commenced in the Land Court Department on
February 4, 2004, and December 28, 2005, respectively.

After consolidation, the case was heard by *Leon J. Lombardi,*
J.

*Peter S. Farber* for the plaintiffs.

*E. James Veara* for planning board of Brewster.

*Albert J. Schulz* for Philip C. Jackson & another.

SMITH, J. On December 16, 2003, the planning board (board)
of the town of Brewster (town) voted to disapprove the petition

---

[1]Anna L. Matthews.

[2]Ruddy Duck, LLC; Philip C. Jackson; Elizabeth A. Jackson; and other
owners of lots in Wood Duck Estates and their mortgagees.

[3]David J. Matthews, Third & another *vs.* Planning Board of Brewster.

of David J. Matthews, III, and Anna L. Matthews (collectively, the Matthewses) for a preliminary subdivision plan for a development known as Stonewood. The board concluded that the Stonewood subdivision's proposed access road, Stonewood Road, would require vehicles to traverse the roads in Wood Duck Estates (Wood Duck), an abutting approved subdivision, thereby requiring modification of Wood Duck's subdivision plan, which the Matthewses had not obtained.

The Matthewses filed a complaint against the board in the Land Court on February 4, 2004, seeking a judgment declaring that the board improperly denied their application for approval of the Stonewood preliminary subdivision plan. The complaint further asked for a finding that the Stonewood subdivision plan did not constitute a modification of the Wood Duck subdivision plan, or to the extent that it did constitute a modification, as that term is used in G. L. c. 41, § 81W, that the modification did not affect the Wood Duck lots.

On April 28, 2005, the Matthewses filed an amended complaint, naming as additional defendants all of the lot owners in Wood Duck and their mortgagees. The amended complaint sought, in addition to the declaratory judgment count, a count seeking relief in the nature of mandamus.

On May 24, 2005, Philip C. Jackson and Elizabeth A. Jackson (collectively, the Jacksons), owners of lot 6 of Wood Duck and defendants in the Matthewses' first amended complaint, filed a motion to compel joinder of Peter Willard and Ruddy Duck, LLC (Ruddy Duck), Wood Duck's developers. The parties stipulated that Ruddy Duck would be made a party to the complaint. The Jacksons also filed a cross claim against Ruddy Duck, (1) alleging that it breached its fiduciary duty when it amended the Wood Duck Declaration of Restrictions (declaration) to permit the Stonewood subdivision an easement over its roads; and (2) seeking a declaratory judgment that the corresponding amendment to the declaration was invalid.[4]

In November of 2005, the Matthewses submitted a definitive subdivision plan for the Stonewood development to the board. All of the lots shown in the plan had frontage on a single sub-

---

[4]The issues raised by the Jacksons in their cross claim against Ruddy Duck were deemed moot or waived by the judge, and are not before us on appeal.

division road, Stonewood Road. That road passed through lot 5 of Wood Duck Estates (lot 5) and intersected with Ruddy Duck Road at approximately a right angle. Lot 5 is owned by the Matthewses.

A public hearing on the Matthewses' definitive plan was held on December 6, 2005. The board denied approval of the plan "until modification of the previous subdivision, Wood Duck Estates, is approved to allow the conversion of one of the residential lots into a road for the proposed Matthews subdivision, and all of the owners within the Wood Duck Estates consent to said modification." The board also stated that "[t]he lots within the Wood Duck Estates are restricted by Recorded Plan notes and Covenants which prevent the conversion of a residential lot into a road access without a formal modification of the original subdivision approval . . . , which modification has not yet occurred."

In response to the board's denial, the Matthewses filed a complaint in the Land Court on December 28, 2005, alleging that the board exceeded its authority in concluding that the Stonewood plan required a modification of the Wood Duck plan. The Matthewses requested an annulment of the December 6, 2005, decision denying the Stonewood plan. A second count sought a declaratory judgment declaring that the Stonewood plan did not constitute a modification of the previously approved plan that created Wood Duck.

The two complaints were consolidated, and went to trial in Land Court on October 18, 2006. After hearing witnesses and reviewing several exhibits, the judge upheld the board's decisions on May 9, 2007. The Matthewses filed a timely appeal.

1. *Facts.* The facts underlying the controversy are not disputed. We first outline the history of Wood Duck.

a. *Wood Duck.* On March 20, 2001, the board approved the definitive Wood Duck subdivision plan. Access to Wood Duck was provided by an extension of Wood Duck Road first shown on a definitive subdivision plan approved by the board in 1985. The Wood Duck plan, as approved by the board, contained six notes. Note 2 provided, "There shall be no extension of either Wood Duck Road or Ruddy Duck Road to any land adjoining the subdivision land shown on the plan." The Wood Duck plan,

including note 2, was endorsed by the board on April 17, 2001, and recorded in the Barnstable County registry of deeds on June 4, 2001.

Also on April 17, 2001, the board gave its approval and accepted an agreement and covenant (covenant) given by Wood Duck's developers. The covenant contained a provision identical to note 2. The covenant was recorded in the Barnstable County registry of deeds. Attached to the covenant and referenced therein was a declaration of restrictions (declaration) dated April 12, 2001.[5] The declaration provided in relevant part:

"2. Subdivision of Lots and Use.

"(a) No lot shall be further subdivided so as to create two or more building sites nor shall any Lot be used as access to any adjoining land except another Lot.

". . .

"14. Roads.

"(a) Except as otherwise provided herein, every owner shall have a right of way and an easement of enjoyment for all purposes for which roads are commonly used in the Town of Brewster with all others who are or may become lawfully entitled thereto.

". . .

"(c) Until the Roads established by the Declarant for the use of the owners of the Lots have been dedicated to the public use as a public road and accepted by the Town of Brewster or other public authority, . . . each Lot Owner by the acceptance of a deed to a Lot agrees to pay a pro rata share of the cost of operating, maintaining and repairing the Roads and the roadside in substantially the same condition as originally built and in a presentable condition."[6]

---

[5]It is not clear from the record whether the covenant and the declaration played any role in the board's approval of the Wood Duck plan. The covenant and the declaration, however, were referred to by the judge in his decision.

[6]In section 11(b) of the declaration, the developers of Wood Duck explicitly reserved the right to amend section 2(a) at any time, "in [their] sole judg-

Between January 18, 2002, and February 3, 2003, seven bona fide purchasers bought Wood Duck lots 1, 2, 3, 6, 7, 8, and 9, subject to the above restrictions. Each deed conveying title to the lots also contained the following paragraph:

> "The Lot is conveyed subject to and together with the benefit of any and all rights, rights of way, easements, appurtenances, restrictions and reservations of record, . . . including without limitation the Wood Duck Road, Brewster, Massachusetts Declaration of Restrictions . . . and the Notes and Legends on the [Wood Duck plan]."

The deeds further provided:

> "No fee in the roads and ways as shown on the Plans is hereby conveyed, Ruddy Duck LLC specifically reserving the fee in all the roads and ways as shown on said plan. There is granted as appurtenant to the Lot a right of way for all purposes for which rights of way are commonly used, in common with all others who are or who may become lawfully entitled thereto, in, over and upon Wood Duck Road and Ruddy Duck Road . . . subject however to the limitations set forth in the Restrictions."

On October 15, 2003, Ruddy Duck executed and recorded an amendment to the declaration pursuant to section 11(b), deleting the first sentence of section 2(a) (see note 6, *supra*). In place of the deleted sentence, the following sentence was added:

> "No lot in its initial configuration shall be further subdivided so as to create two or more building sites; *however, any lot may be used as access to adjoining land, either within the Property or outside the Property*" (emphasis added).

Also on October 15, 2003, Ruddy Duck deeded lot 5 in Wood Duck to the Matthewses for $269,000. Lot 5 is approximately 118,048 square feet with 436.68 feet of frontage on Ruddy Duck Road.

b. *The Matthewses' subdivision.* The Matthewses also own a 22.6-acre parcel of land abutting Wood Duck. Although the

ment," as long as they continued to own at least one lot in Wood Duck.

Matthewses were aware of the restrictive language in the deeds to the Wood Duck lots previously sold and the declaration in the Wood Duck plan, the Matthewses obtained Ruddy Duck's approval to construct an access way on lot 5. They were also granted an additional easement to use Wood Duck's roads for their proposed subdivision. The Matthewses needed access to the Wood Duck roads in order to create the six-lot Stonewood subdivision on their land abutting Wood Duck. In order to reach their subdivision, the Matthewses proposed construction of Stonewood Road on lot 5. Stonewood Road would traverse lot 5 and connect to Ruddy Duck Road in the Wood Duck subdivision.

In 2005, the board unanimously voted to deny the Matthewses' subdivision plan because there was a "note[] on the recorded plan" and "covenants" in favor of the lot owners in the Wood Duck subdivision that prevented the conversion of lot 5 into an access road and limited the use of Ruddy Duck Road to the Wood Duck lot owners.

c. *The judge's decision.* After trial in the Land Court, the judge concluded that "[t]he outcome of this decision rests largely upon the terms and conditions placed upon the approval of the Wood Duck plan in 2001." The judge found that using lot 5 to tie into Stonewood Road amounted to a modification of the Wood Duck subdivision plan. Specifically, the judge found that note 2 of the Wood Duck subdivision plan, prohibiting any "extension of either Wood Duck Road or Ruddy Duck Road to any land adjoining the subdivision land shown on the plan," prevented the Stonewood plan from being approved without the consent of the lot owners of Wood Duck.[7,8]

On appeal, the Matthewses claim that the judge committed error in (1) concluding that lot 5 in Wood Duck could not be used as access to the Matthewses' subdivision; (2) ruling that the use of lot 5 in Wood Duck to create a road to access the Matthewses' subdivision constituted a modification of the Wood Duck subdivision; and (3) ruling that the lot owners in Wood Duck could prevent Ruddy Duck from granting an easement in

[7]The Matthewses apparently tried but could not secure those consents.

[8]The judge did not reach the issue whether the amendment to section 2(a) of the declaration was valid.

Wood Duck Road and Ruddy Duck Road to the Matthewses as appurtenant to their 22.6-acre parcel.

2. *Discussion.* a. *Interpretation of the documents.* The parties agree that the dispute is over the proper interpretation of the operative documents' language, specifically the recorded Wood Duck subdivision plan and the declaration as agreed to by the board and the Wood Duck developers. "Interpretation of an unambiguous contract invokes questions of law to be decided by the judge." *Quinn* v. *Mar-Lees Seafood, LLC*, 69 Mass. App. Ct. 688, 695 (2007). Therefore, we review de novo the interpretation of the documents and are not bound by the judge's conclusions. See *Robert Indus., Inc.* v. *Spence*, 362 Mass. 751, 755 (1973).

"Justice, common sense and the probable intention of the parties are guides to construction of a written instrument." *Haverhill* v. *George Brox, Inc.*, 47 Mass. App. Ct. 717, 720 (1999), quoting from *Stop & Shop, Inc.* v. *Ganem*, 347 Mass. 697, 701 (1964). "When the words of a contract are clear, they must be construed in their usual and ordinary sense." *General Convention of the New Jerusalem in the U.S., Inc.* v. *Mac-Kenzie*, 449 Mass. 832, 835 (2007). "The words of a contract must be considered in the context of the entire contract rather than in isolation." *Ibid.* In this case, pursuant to subdivision control law, the board had the authority to condition the approval of the Wood Duck plan on reasonable conditions "designed for the safety, convenience and welfare" of the town's inhabitants. *Costanza & Bertolino, Inc.* v. *Planning Bd. of N. Reading*, 360 Mass. 677, 679 (1971). See G. L. c. 41, §§ 81K to 81GG. Therefore, we must ascertain the intent of the board when it granted approval for the Wood Duck subdivision plan. Cf. *Toothaker* v. *Planning Bd. of Billerica*, 346 Mass. 436, 440 (1963) (as a condition of approving a subdivision plan, a planning board may impose any lawful requirements).

When the board approved the Wood Duck subdivision, the covenant, the notes, and the declaration of the final plan contained several provisions related to Wood Duck's roads. Both the covenant and note 2 of the plan contained identical language stating, "[t]here shall be no extension of either Wood Duck Road or Ruddy Duck Road to any land adjoining the subdivi-

sion land shown on the plan." In addition, section 2(a) of the declaration originally provided that none of the Wood Duck lots could be used to access any land adjoining that subdivision. "[I]nterlocking documents [that] are part of a single transaction and are 'interrelated in purpose,' must be read together to effectuate the intention of the parties." *Striar* v. *American Med. Intl., Inc.*, 45 Mass. App. Ct. 87, 95 (1998), quoting from *Chase Commercial Corp.* v. *Owen*, 32 Mass. App. Ct. 248, 250-251 (1992). Therefore, limiting the use of Ruddy Duck Road and Wood Duck Road appears to have been significant to the board's approval of the Wood Duck subdivision plan. Cf. *Hamilton* v. *Planning Bd. of Beverly*, 35 Mass. App. Ct. 386, 388 (1993) (note limiting number of lots in subdivision plan is integral part of planning board's approval). See generally *Stoneham* v. *Savelo*, 341 Mass. 456, 458 (1960) (one principal object of subdivision control law is to control safe traffic flow from proposed subdivision to public way). As such, the judge was correct to conclude that the board intended to limit the use of Ruddy Duck Road and Wood Duck Road to contiguous lots in the Wood Duck subdivision in order to limit the volume of traffic.

Interpreting the word "extension" in a linear, geometric manner, as suggested by the Matthewses, appears contrary to the spirit of the subdivision documents and inconsistent with the intent of the board to circumscribe the nature of the approved roads. As the judge concluded, "[w]hile the access to the Matthews land is accomplished by a new road tying into the sideline of Ruddy Duck Road, rather than an extension from the end of one of the two cul-de-sacs, . . . the distinction [is not] a substantive one."

When read in conjunction with the other Wood Duck subdivision documents, we conclude that the board intended that the subdivision roads shown on the Wood Duck plan would service only the nine lots created therein. Therefore, using any portion of Wood Duck Road or Ruddy Duck Road as access to a proposed subdivision on the Matthewses' land would violate the terms and conditions upon which the board approved the Wood Duck plan. Accordingly, Matthewses must obtain a modification of the Wood Duck plan pursuant to G. L. c. 41, § 81W, before

the Stonewood plan can be approved.[9]

b. *Grant of an easement.* Finally, the Matthewses contend that Ruddy Duck may grant an easement in Wood Duck Road and Ruddy Duck Road to the Matthewses for use by the proposed Stonewood subdivision as appurtenant to the Matthewses' original 22.6-acre parcel. The board contends that, although the Matthewses may personally have an easement over Ruddy Duck Road and Wood Duck Road as owners of lot 5, the language of the Wood Duck subdivision plan and the lot owners' deeds prevent Ruddy Duck from granting an easement to the Matthewses over Wood Duck's roads for the benefit of future owners of the Stonewood subdivision.

The deeds transferring lots in Wood Duck referenced the provisions of the declaration, which (1) granted the lot owners an easement in Wood Duck Road and Ruddy Duck Road, in common with others lawfully entitled to use the roads; and (2) required the lot owners to maintain the roads "in substantially the same condition as originally built." Ruddy Duck expressly retained the fee in the roads. However, the developers did not reserve the right to grant easements to owners of land outside the Wood Duck subdivision. Additionally, the lot owners purchased their property with notice of the limitations of the use of the roads, as noted in note 2, and with the original restrictive language in the declaration.

---

[9]General Laws c. 41, § 81W, as amended by St. 1977, c. 473, provides, in relevant part, "[a] planning board . . . shall have power to modify, amend or rescind its approval of a plan of a subdivision . . . as a condition of its retaining the status of an approved plan." The Matthewses' argument that modification is not needed because the proposed use will not change the location or the width of Ruddy Duck Road is unavailing because we conclude that the intent of the board was to limit the use of Wood Duck's roads and not just their physical size.

Although not argued by the Matthewses, the board contends that the consent of the Wood Duck lot owners and their mortgagees would be required to modify the Wood Duck subdivision plans. General Laws c. 41, § 81W, provides that "[n]o modification . . . . of the approval of a plan of a subdivision or changes in such plan shall affect the lots in such subdivision which have been sold or mortgaged . . . without the consent of the owner of such lots." Although increased traffic volume may not "affect" the lots, see *Patelle* v. *Planning Bd. of Woburn*, 20 Mass. App. Ct. 279, 282-283 (1985), the lot owners were entitled to rely on the enforcement of notes in the recorded subdivision plans (i.e., note 2) and the recorded covenant (which contained the same limiting language). Therefore, their consent to any modification is required.

"An easement is an interest in land which grants to one person the right to use or enjoy land owned by another." *Commercial Wharf E. Condominium Assn.* v. *Waterfront Parking Corp.*, 407 Mass. 123, 133 (1990). We determine whether Wood Duck's developers intended the easement to be exclusive to the nine lots in Wood Duck by examining the language of the easement itself. See *Sheftel* v. *Lebel*, 44 Mass. App. Ct. 175, 179 (1998). Where a deed grants an easement, all parts of the deed are to be read consistently to ascertain the intent of the draftsman. *Brooks* v. *Capitol Truck Leasing, Inc.*, 13 Mass. App. Ct. 471, 476 (1982).

The judge found that the original development scheme intended that "the roads shown on the Wood Duck [subdivision plan] would service only the nine lots created thereon." We think that finding was not plainly wrong. See *Murphy* v. *Donovan*, 4 Mass. App. Ct. 519, 527 (1976). "An easement is to be interpreted as available for use by the whole of the dominant tenement existing at the time of its creation." *Pion* v. *Dwight*, 11 Mass. App. Ct. 406, 410 (1981). The judge reasonably concluded from the recorded documents that, at the time the lots were sold, the parties intended that only the Wood Duck lots shown on the subdivision plan would be granted easement rights and that the owners of those lots would be responsible for maintaining the roads. The finding that "the [proposed] construction of Stonewood Road and its tie-in into Ruddy Duck Road [was] inconsistent with the requirement to keep Ruddy Duck Road in substantially the same condition as originally built" was reasonable considering that use of the roads by the six proposed Stonewood lots, and the maintenance required to maintain the roads, would nearly double.[10] Furthermore, "[p]rivate ways are confined in their use to the purposes for which they are granted, and cannot be further extended by the grantees." *Greene* v. *Canny*, 137

_____

[10] If there are other beneficial uses consistent with Wood Duck lot owners' rights, Ruddy Duck may use the land in such a manner. If not, however, Ruddy Duck "would hold the title simply as a barren fee. To grant others than the owners of these lots rights of way, would be to grant obstructions of those which [it] had already granted. It would add to the expenses of those who were to keep the way in repair, while their own enjoyment would be less convenient and beneficial as it might be more or less interfered with by the enjoyment of others." *Greene* v. *Canny*, 137 Mass. 64, 68 (1884).

Mass. 64, 68 (1884). Although the Matthewses have the benefit of the easement over Ruddy Duck Road and Wood Duck Road as owners of lot 5, they may not use those roads for access to the abutting land outside the Wood Duck subdivision. *Mannering's Case*, 290 Mass. 517, 520 (1935) ("[o]ne who has a right of way appurtenant to a specified lot of land cannot lawfully use it to reach another parcel owned by him to which it is not appurtenant").[11] Therefore, where the Wood Duck lot owners are entitled to rely upon the recorded documents indicating that they were granted an exclusive easement, Ruddy Duck may not grant the Matthewses an easement over Wood Duck's roads to service a new subdivision.

For the foregoing reasons, we affirm the judgment of the Land Court.

*So ordered.*

---

[11]In the absence of language to the contrary, easements are presumed to be nonexclusive and "doubts are to be resolved in favor of freedom of land from servitude." *Butler* v. *Haley Greystone Corp.*, 352 Mass. 252, 258 (1967). "A servient owner retains the use of his land for all purposes except such as are inconsistent with the right granted to the dominant owner." *Ibid.*, quoting from *Merry* v. *Priest*, 276 Mass. 592, 600 (1931). The use proposed by the Matthewses *could* be considered compatible with the Wood Duck lots *if* the Stonewood lots were required to pay their pro rata share of the maintenance costs. However, even if Ruddy Duck could grant an easement over its roads to the Stonewood lots, we think that the Matthewses would still require a modification of the Wood Duck subdivision plan as discussed, *supra*.